SWANSON v. BATES et al.

No. 33714. Oct. 25, 1949.

*211 P. 2d 781.*

W. F. Semple and H. L. Fitzgerald, Jr., both of Tulsa, for plaintiff in error.

George W. Leopold, of Muskogee, for defendant in error Muskogee Welfare Association.

R. M. Mountcastle, of Muskogee, for defendant in error Carl K. Bates, Trustee.

O'NEAL, J. This is an appeal from an order approving the 4th Annual Report of Carl K. Bates, trustee of the estate of Annie S. Cook, deceased.

Annie S. Cook, a resident of Muskogee county, died testate October 25, 1937. Her will was admitted to probate in Muskogee county November 16, 1937. Said will created a testamentary trust and named I. H. Mertz as executor of the will and also trustee of the trust. Said will, after making six specific bequests, set up the trust estate. It named I. H. Mertz as trustee and devised and bequeathed to said Mertz all the residue and remaining property of testator's estate in trust for the benefit of testator's nephew, Frederick S. English; his daughter, Dorothy Evalyn English; a friend of testator, Guy E. Black; and two of testator's faithful servants, James Bruce and Anna Pinah Ferguson, named therein as "beneficiaries." The life of the trust is as long as any of the said beneficiaries are living. The trustee, or his successor, is directed to pay and apply "as much of the income or any part thereof, that he may, in his uncontrolled discretion, consider proper to and for the personal support and maintenance or otherwise for the benefit of said beneficiaries."

The will further provides:

"This Trust Fund shall begin at my death and continue during the life of all the beneficiaries herein named, my nephew Frederick S. English, his daughter, Dorothy Evalyn English, my friend, Guy E. Black and my two servants, James Bruce and Anna Pinah Ferguson, and when all of the above named beneficiaries be dead and their just

debts and funeral expenses are paid then the Trustee shall sell all of the remaining Estate within Three (3) years after the death of the last living beneficiary, and the proceeds of such sales shall be divided as follows:

"One-fourth as a fund to be used to give loans to deserving young white men of Oklahoma to go through College.

"One-fourth as a fund to be used to give loans to deserving young white women of Oklahoma to go through College.

"One-fourth to endow the Old Folks Home of Muskogee, Oklahoma.

"One-fourth to endow the Day Nursery of Muskogee, Oklahoma."

Mr. Mertz served as executor until about November 17, 1938, at which time he was removed as executor by the county court, and he was also removed as trustee. Carl K. Bates was appointed administrator with the will annexed; he served until his discharge October 22, 1942, at which time the property was distributed to him as trustee.

There was some litigation growing out of the administration and management of the trust. (For a summary of that litigation, see Mertz v. Owen et al. and Mertz v. English et al., 191 Okla. 77, 126 P. 2d 720.)

During that litigation, and as a result thereof, Mr. Mertz was removed as trustee and Mr. Bates appointed administrator with the will annexed.

On October 6, 1942, the county court of Muskogee county approved the final account of the administrator and entered a decree of distribution, distributing assets of the estate to Mr. Bates as trustee.

Mr. Bates, as trustee, filed his annual reports October 7, 1943, October 25, 1944, and March 20, 1946. All such reports were set for hearing, due notice was given to all parties interested, and after hearing each report they were approved by the district court of Muskogee county.

The 4th Annual Report of the trustee, covering his accounts and doings from January 1, 1946, to December 31, 1946, an application for audit of the trust account, and petition for the approval of the report, including payment of trustee's compensation in the sum of $12,000, and compensation of the attorney for the trust in the sum of $5,000, were filed in the district court of Muskogee county April 3, 1947.

In the course of the prior litigation above mentioned the will had been construed by the district court of Muskogee county. The court in that case construed the will to the effect that that part of the will providing for the final distribution of the estate after the termination of the trust, by which one-fourth would go as a fund to be used to give loans to deserving young white men of Oklahoma to go through college and one-fourth to go as a fund to be used to give loans to deserving young white women to go through college, was invalid and void for uncertainty, and on termination of the trust the next of kin of the deceased living at the time of the death of testator would inherit one-half interest in the estate, and that Muskogee Welfare Association, of which the Old Folks Home of Muskogee and the Day Nursery of Muskogee are departments or branches, would take the other half of the remaining assets of the trust.

By the time the 4th Annual Report of the trustee was filed, all the five life beneficiaries named in the will were deceased except Dorothy Evalyn English who had married and her name then was Dorothy Evalyn Swanson.

The court set the matter for hearing for May 28, 1947, and ordered that objections or exceptions thereto, if any, be filed on or before May 24, 1947.

Citations to all interested parties were issued and duly served on all the interested parties except Dorothy Evalyn Swanson. She appeared voluntarily on May 19, 1947, and by W. F. Semple, her attorney, filed protest to the ap-

proval of said 4th Annual Report of the trustee. Therein she set up four grounds for her protest:

"(1) That the fee claimed by the trustee for the period covered by the report ($12,000) is excessive and not commensurate with the type, amount and character of the services required to be rendered by the trustee; and that the amount of the fee claimed was not arrived at as a result of any agreement with the protestant, whereas the trust instrument contemplated that the trustee's compensation shall be such an amount as shall be agreed upon by the trustee and the beneficiaries;

"(2) that the amount claimed as payment by the trustee as attorney's fees ($5,000) is excessive and unwarranted, in that the estate has not been involved in any litigation, nor has the trustee been required to perform any duties to make it necessary for him to employ an attorney upon a fixed salary or upon any other basis;

"(3) that the amount paid the protestant as sole surviving beneficiary is not a fair and equitable share of the current income to which the beneficiary is entitled;

"(4) that the amount paid for betterments, improvements, and like purposes, including sums set aside for depreciation, constitute an unfair allocation and apportionment of current income as a result of which the beneficiary is being denied current income to which she is justly entitled."

The trustee filed a detailed reply to the protest of Dorothy Evalyn Swanson. Therein, by way of plea in bar as to ground No. I of the protest, he alleged that the court had theretofore at a hearing at which protestant was present, and in which she participated, fixed the compensation of the trustee at $1,000 per month "until the further order of the court."

Said reply also set forth certain provisions of the will and other matters contained in judgments and orders theretofore made in the course of prior litigations concerning the administration of the trust, and also set forth the records showing the amounts theretofore paid to protestant and set forth at length the condition of the property belonging to the estate as of the date of the death of Annie S. Cook, and the repairs and improvements made by the trustee since the property was distributed to him and the alleged necessity therefor.

Muskogee Welfare Association filed a response to the protest to the 4th Annual Report, alleging that it is a corporation organized under the laws of the State of Oklahoma, and that it was organized for charitable purposes only; that as mentioned in the will it is a parent organization of which the Old Folks Home of Muskogee and the Day Nursery of Muskogee are departments. It plead a number of the provisions of the will and then set forth that the Welfare Association did not see fit to, and did not protest the report of the trustee as to the compensation claimed by the trustee, nor as to the amount paid to the attorney for the trustee.

As to paragraph III of the protest, the Welfare Association alleged that the will does not contain a provision that protestant is or can be entitled to a "fair and equitable share of the current income" of said estate, and further pleads an order or judgment of the district court in an action by protestant, case No. 27696, in the district court of Muskogee county, for construction of the will, wherein it was adjudged and decreed as follows:

"It is further found, ordered, adjudged and decreed that the said Frederick S. English and Dorothy Evalyn English are not entitled to a life estate in the property of said Annie S. Cook, deceased, and are not entitled to the income from said estate, as claimed by them, but that they are entitled only to such benefits out of the income from said estate as the Trustee of the trust estate established by said Will, shall pay or apply to or for them or for their benefit, under the express provisions of said Will."

The Welfare Association further alleged that the amounts paid by the

trustee for protestant Dorothy Evalyn Swanson, and particularly the payment of $20,000 for the year 1945, and $17,-6J0 for the year 1946, "are far in excess of benefits to which said protestant is entitled under the provisions of said will, and particularly paragraph 27 thereof and are far in excess of the amount which said Trustee would have deemed or considered proper for the purposes therein set out, if he had exercised his uncontrolled discretion according to the provisions of said Will."

The response of the Welfare Association further alleged:

"That the said protestant should be required to appear and present evidence as to her needs and necessities to the end that the Trustee may be enabled to determine such needs and necessities and may be enabled to exercise the uncontrolled discretion which he is not only authorized but required to exercise under the provisions of said Will by which said trust estate was created."

As to paragraph IV of the protest, the Welfare Association alleged:

"As to paragraph four of said protest this respondent states, that said paragraph is based upon an assumed situation which does not exist, in that it assumes that said protestant is entitled to a fair allocation and apportionment of currect (sic) income from said estate on some basis which does not appear, whereas her rights to participate are clearly fixed by said Will and the aforesaid construction thereof, and there is no possible basis therein for the objection set out in paragraph four."

The hearing on the report of the trustee, the protest and reply, and response thereto, was had commencing September 17, 1947, and continued from time to time to December 16, 1947, at which time the court made and filed extended findings of fact and conclusions of law and entered judgment and decree fully approving the 4th Annual Report of the trustee, including trustee's compensation in the sum of $12,000 and the amount paid to the attorney for the trustee in the sum of $5,000. Protestant Dorothy Evalyn Swanson appeals.

When the matter was called for trial, and before any evidence was presented, protestant in open court withdrew and dismissed her protest as to grounds Nos. III and IV. That was after Muskogee Welfare Association had filed its response alleging or suggesting that the amount paid to protestant, particularly for the years 1945-46, was far in excess of the benefits to which protestant was entitled in the will, and particularly paragraph 27 thereof, and requesting that protestant be required to present evidence as to her needs and necessities.

That left only the questions as between the trustee and protestant, the reasonableness of the amount of compensation claimed by the trustee and the reasonableness of the amount paid to the attorney for the trustee, and as between the protestant and the Muskogee Welfare Association it left only the amount paid to protestants for the year 1946. The amount paid to the protestant for the year 1945 had theretofore been approved and that order had become final.

There are seven assignments of error, but those presented in the briefs of plaintiff in error are:

(I) Error in overruling the motion for new trial.

(II) Error in not rendering judgment for plaintiff in error.

(III) Error in entering judgment against plaintiff in error, and

(IV) That the trial court committed error in holding that the district court of Muskogee county had jurisdiction of the trust estate of Annie S. Cook, deceased.

Assignments numbers II and III go to the question as to the sufficiency of the evidence. Assignment number IV goes to the question of jurisdiction.

We first consider the question of jurisdiction. It seems to be the con-

tention of counsel for protestant that since the trust instrument was executed, and the trustor died prior to the enactment of the Oklahoma Trust Act (Title 60, chap. 4, House Bill No. 174, Session Laws 1941) that act has no application. This contention is apparently based in part upon a provision in the will that after the distribution of the estate to the trustee in the administration of the trust estate, the trustee shall not be subject to the directions, supervision or control of any probate court.

60 O. S. 1941 §175.53, a part of the Oklahoma Trust Act, provides:

"The terms of this Act shall apply in the construction of and operation under,

"A. All agreements containing trust provisions entered into subsequent to the effective date hereof;

"B. All wills made by testators who shall die subsequent to the effective date hereof; and

"C. All other wills and trust agreements and trust relations in so far as such terms do not impair the obligation of contract or deprive persons of property without due process of law under the Constitution of the State of Oklahoma or the United States of America."

The question of whether the Oklahoma Trust Act applies to trust instruments executed before the passage of said Act has been adjudicated. It appears that plaintiff in error, after the 4th Annual Report of the trustee was filed, brought an action in the United States District Court of the Eastern District of Oklahoma against Carl K. Bates et al., for the removal of Bates as trustee; for an accounting of Bates as trustee; for the construction of the will; and for the fixing of definite sums to be paid to Dorothy Evalyn Swanson as a beneficiary under the trust. The United States District Court dismissed the action upon the ground that the proceedings pending in the district court of Muskogee county gave that court exclusive jurisdiction of the sub-

ject matter. Dorothy Evalyn Swanson appealed to the United States Court of Appeals, 10th Circuit, and that court affirmed the order of the United States District Court. In the opinion of the Court of Appeals the provisions of 60 O.S. 1941 §175.53 were cited, and it was stated:

"(1) The provisions of §§175.23 and 175.39 do not deprive any person of any substantive right under the testimentary trust. At most, they provide new remedies.

"(2, 3) A state may change methods of procedure, or substitute one remedy for another. It is free to 'choose the remedy best adapted, in the legislative judgment, to protect the interests concerned, provided its choice is not unreasonable or arbitrary, and the procedure it adopts satisfies the constitutional requirements of reasonable notice and opportunity to be heard.'

"(4) No one has a vested right in a given mode of procedure and so long as a substantial and efficient remedy is provided, due process of law is not denied by a change in remedy.

"(5) Upon the filing of the fourth annual report and the applications filed in connection therewith, the jurisdiction of the district court of Muskogee County attached. Those proceedings were quasi in rem, and, so long as they pended, they gave to the state court exclusive jurisdiction over the trust estate, and the court below was without jurisdiction to grant the relief prayed for in the instant action." Swanson v. Bates et al. (10 Cir.) 170 Fed. 2d 648.

Also see Franklin et al. v. Margay Oil Corp. et al., 194 Okla. 519, 153 P. 2d 486.

The contention that the district court was without jurisdiction cannot be sustained.

Plaintiff in error has presented no abstract of the evidence, as required by Rule No. 15 of this court, but defendant in error has presented a fairly complete abstract of the evidence. The record shows that the trust estate owns and operates the Severs Hotel in Muskogee—a 10 story, 210 room brick

building; about 45 pieces of rental property located in the business district of Muskogee with some 45 tenants; 480 acres of bottom land near Muskogee which is rented for cash rent, and 3,971 acres of farm and grazing land located in Muskogee and Okmulgee counties. The record shows, and the trial court found:

"At the death of Annie S. Cook her estate inventoried the sum of $432,-281.55, subject to an indebtedness of $123,488.19, or a net estate of $308,-793.36. . . . Since that date and under the supervision of the District Court the trustee up to December 31, 1946 has paid off the indebtedness of $123,-488.19 against the estate and the further sum of $118,777.19 Estate Taxes, bequests and incidental expenses of administration of the estate (part of the money therefor being profits of his operation as administrator) —he has spent $110,874.12 in repairs and improvements to the estate—and on December 31st, 1946 had a backlog of $106,888.68 as profits and addition to the estate for all purposes for which it might be used or kept. In addition to this, and since the date of his appointment (Oct. 6th, 1942) and up to the end of the year 1946 the trustee had paid to the beneficiaries (Fred S. English and Evalyn English Swanson) the total sum of $89,216.84—total of these figures show that above expenses, taxes and his compensation, the trustee has earned as profits of the operation of the estate the total figure of $460,-502.65."

In addition to the $460,502.65, and up to the beginning of the year 1946, Bates had reserved to himself, and had been allowed by the court for his services, the total sum of $34,360. This was compensation for the period October 6, 1942, to December 31, 1945, three years, two months and 25 days.

The evidence further shows that prior to the appointment of Bates, as administrator with the will annexed, the hotel and other property belonging to the estate was in a run-down condition, out of repair, and the estate was being operated at a loss, or without any substantial profit. As of December 31, 1946, total assets (book value) were $396,709.73. There is evidence to the effect that at the date of the hearing the market value of the estate was about $1,000,000. Thus, it appears from the evidence, and as found by the trial court, that under the management of Bates the value of the estate has increased in (book) value from about $190,000 to about $396,700, an increase in value of about $206,093. As found by the trial court, Bates has brought the trust to the condition of a rich estate. The evidence shows that Bates devotes practically all of his time to the management of the trust estate; that the gross income of the estate for 1946 was about $317,000.

The trustee has under his supervision and control the Severs Hotel with 207 rentable rooms and approximately 100 employees; he also has the supervision and control of the 45 business properties in the city of Muskogee with about 45 tenants and has active management and control of the 3,971 acres of farm and grazing land upon which he has about 17 tenants, some of whom pay cash rent and some pay crop rent. He also has supervision and control of the 480 acres of land near Muskogee which he rents for cash. The net income for the year 1946 was about $49,-000 before payment to the trust and the attorney for the trustee.

As found by the trial court, no witness, with a survey before him of the services rendered, testified that the compensation of $12,000 for the year 1946 was excessive. H. H. Ogden, and several other qualified witnesses, testified that the amount claimed was reasonable. In addition, it was stipulated that about 20 other qualified witnesses would, if permitted to testify, testify to the same.

Counsel for the protestant claims that the compensation in the sum of $12,-000 per year is excessive and contends that in the absence of a provision in the will, or a statute fixing compensation for a trustee of a testamentary trust, the fees as compensation pro-

vided by statute for guardians and administrators should be applied. The will itself, paragraph nineteen, provides:

"Nineteenth. The Trustee shall be entitled to reasonable compensation for his services in the performance of this Trust, and in case of disagreement between the Trustee and Beneficiaries hereunder, such compensation shall be fixed by any Court of competent jurisdiction."

60 O. S. 1941 §175.48 provides:

"A trustee acting in .a fiduciary capacity, as herein authorized, is entitled to receive such compensation or commission as provided for in the trust agreement or other contract. If the amount of such compensation or commission is not regulated by or stipulated in the trust agreement, the trustee may charge and deduct a reasonable compensation or commission for the services rendered and the responsibilities assumed. Where the trustee is acting under appointment by a court, such compensation or commission shall be paid, irrespective of the provisions in the trust instrument, as allowed or approved by that court."

Counsel for protestant points out that the compensation of an administrator cannot exceed the sum of $4,000, whether the estate is inventoried at $1,000,000 or $20,000,000.

The court in disposing of the contention that the Oklahoma statute applicable to guardians and administrators should apply to trusts and if so applied, the compensation could not exceed $4,000, said:

". . . the suggestion of maximum compensation for a competent trustee capable of handling a twenty million dollar estate and who gave all of his time to and successfully managed such an estate is limited to a pay of four thousand dollars a year is not only absurd, but is in the teeth of the plain Oklahoma Statute on uses and trusts which provides in plain language that 'The trustee may charge and deduct a reasonable compensation or commission for the services rendered and the responsibilities assumed.' "

The trial court further said:

"No other authority than the statute is needed in this connection that the pay of the trustee is reasonable compensation in the discretion of the Court taking into consideration 'the services rendered and the responsibilities assumed.' "

With these statements we fully agree. The will itself and the statutes both provide for reasonable compensation. Counsel for the protestant contends that the claim for compensation should be disallowed for the reason that the trustee did not negotiate with protestant in an attempt to get an agreement as to the amount of compensation. This contention appears to be made under paragraph number nineteen of the will, quoted above, that ". . . in case of disagreement between the Trustee and Beneficiaries hereunder, such compensation shall be fixed by any Court of competent jurisdiction."

That provision means nothing more nor less than that when a report is filed, including a claim for compensation, and the beneficiary protests, as she does in this case, the compensation shall be fixed by a court of competent jurisdiction, which is the district court of Muskogee county.

The trust instrument does require the trustee to at least once a year report his doings, etc., to the beneficiaries. The record shows that the trustee complied with that requirement and reported to the beneficiaries each month; the trustee testified that many times he attempted to have conferences with the beneficiaries concerning the handling of the estate, including his compensation, but that he could not get them together. In view of the prior litigation, such efforts would appear to be entirely futile. The trial court noted:

". . . the beneficiary here by a policy of hostility to the trustee has made it necessary for the trustee to walk a tight rope of keeping in the clear in the legal status of his acts and doings as trustee . . ."

There is abundant evidence to support the findings and judgment as to the compensation of the trustee.

As to attorney's fee for the trustee, paragraph number sixteen of the will provides that the trustee may select and employ in and about the execution of the trust suitable agents, attorneys and other employees and pay their reasonable compensation, and the court said:

"So far as the attorney's fee is concerned, the trust instrument gives to the trustee the right to hire his attorney and agree with him on his compensation—and this discretion is none of the business of the Court unless the trustee abuses his discretion in this respect. In view of the fact that the beneficiary here by a policy of hostility to the trustee has made it necessary for the trustee to walk a tight rope of keeping in the clear in the legal status of his acts and doings as trustee, and the multitudinous small matters continually required to be passed upon by the attorney, and the further fact that the War Stabilization Board was about to impose sanctions on the hotel in the sum of $29,000, and the amount and value of the services of the attorney in that connection and the result obtained—these things all at least justify the attorney's fee paid, so that it could not be said that the trustee abused his discretion in its payment."

We deem it unnecessary to comment further except to say that there is abundant evidence tending to prove that the amount paid for services rendered by the attorney for the trustee was reasonable and not excessive. In this connection it may be noted that in addition to the multitude of small matters constantly required to be passed upon by the attorney, in one proceeding before the War Stabilization Board, the estate was successful largely through the efforts of the attorney for the trustee, in saving sanctions about to be levied against the trust estate in the sum of $29,000.

In one prior action in which Dorothy Evalyn Swanson was a party, her attorneys were paid out of the funds of the trust the sum of $5,132, and the attorneys for the Muskogee Welfare Association were paid a fee of $5,447.

There is abundant evidence to support the order allowing the attorneys for the trustee the sum of $5,000.

Counsel for protestant complained because the district court of Muskogee county made an order, apparently in the hearing of the 3rd Annual Report fixing the compensation of the trustee at $1,000 per month until the further order of the court. It is said that this amounts to an order fixing the compensation before any services were rendered on the basis of a retainer. It appears that the court in making that order reserved the right to reduce the compensation upon hearing of the next annual report. We see nothing wrong with an order of this kind so long as the court reserves the right to ultimately pass upon the reasonableness of the compensation, taking into consideration the services rendered and the responsibilities assumed.

The trial court went somewhat at length into the evidence concerning the needs and necessity of the beneficiary and intimated that the amount paid for the year 1946 ($17,000) was excessive, but did not disapprove that amount for that year for the reason that it was largely at the suggestion of the court that that amount was paid. The trustee should use his discretion in the matter of determining the amount to be paid to the beneficiary, subject, of course, to final approval by the court. However, we agree with the statement of the trial court that "Mrs. Swanson as the natural object of Mrs. Cook's bounty and as a special object of her affections is entitled to an allowance for her support and maintenance which will give to her all of those things which adorn and embelish (sic) life, short of prodigality of spending or waste."

We also agree that it is not proper that large parts of the allowance to Mrs. Swanson be channeled off to someone, neither the object of Mrs. Cook's bounty nor from whom she had any intent to make provision. We do not think it was within the power or jurisdiction

of the court in this proceeding to direct or limit the amount the trustee should pay the beneficiary in the future. The judgment of the trial court approving the 4th Annual Account of the trustee is affirmed, but insofar as said judgment directs or attempts to direct the trustee how much to pay the beneficiary, Dorothy Evalyn Swanson, in the future, is disapproved and reserved.

DAVISON, C.J., and WELCH, CORN, LUTTRELL, HALLEY, and JOHNSON, JJ., concur.